UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

EMMETT BUFFMAN,

               Plaintiff                         Case No. 5:14-cv-12577

                                            Judge Judith E. Levy

v.                                       Magistrate Judge Anthony P. Patti

MISS MOODY, et al.,

               Defendants
_____/

## **REPORT AND RECOMMENDATION**

**I.**    **RECOMMENDATION**:  The Court should *sua sponte* dismiss Plaintiff's claims against remaining Defendant Moody.

**II.**    **REPORT:**

      **A.**    **Prior Case (Case No. 13-14024 (E.D. Mich.))**

On September 19, 2013, Emmett Buffman (#19368-424) filed a lawsuit *pro se* pursuant to *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 403 U.S. 388 (1971)* and the Federal Tort Claims Act ("FTCA") against six defendants, five of whom are located at Federal Correctional Institution (FCI) Milan.  Case No. 5:13-cv-14024-JEL-MKM (E.D. Mich.).  On January 6, 2015, Judge Levy entered an order which, among other things, granted the individual defendants' motion to dismiss - in part because of Plaintiff's failure to exhaust administrative remedies - and dismissed without prejudice Plaintiff's claims

1

against the five FCI Milan defendants.  (DE 51.)  Thus, the United States of America is the only remaining, active defendant in that case.[1]

### B.   Instant Case (Case No. 14-12577 (E.D. Mich.))

Meanwhile, Mr. Buffman has attempted to initiate another lawsuit in this Court.  On June 26, 2014, at the time the initiating document was filed, the Clerk of the Court docketed as defendants those five individuals listed in the form complaint:  Miss Moody, A. McClatchey and J.A. Terris, each of FCI Milan; Mr. Samuels (Charles E. Samuels, Jr.), Director Federal Bureau of Prisons (FBOP); and Eric J. Holder, Attorney General of the United States.  (DE 1 at 1-2.)

On July 31, 2014, Judge Levy entered an opinion and order of partial summary dismissal – dismissing the complaint with prejudice as to defendants McClatchey, Terris, Samuel, and Holder - and directing service upon the remaining defendant, Miss Moody.  (DE 9.)  To date, Defendant Moody has not been served, and Plaintiff has only reiterated his earlier interest in having her served after being awakened by an unrelated show cause order of very recent vintage.  (*See* DEs 14, 16, 20, 21.)

### C.   Discussion

Judge Levy has referred this case to me for pretrial matters.  (DE 17.)  The issues currently before the Court are the status of Plaintiff's initial, June 26, 2014

---

[1] Counsel has been assigned to represent Plaintiff (DE 64), and, presently, the dispositive motion deadline is set for July 22, 2016 (DE 75).

filing (DE 1) and whether the Court should further pursue efforts to effect service of this lawsuit upon remaining Defendant Moody.  For the following reasons, the Court should dismiss this matter.

## 1. Plaintiff's initial filing is not a true complaint; it is an emergency motion for a restraining order.

At the outset, the Court must comment on whether Plaintiff intended his June 26, 2014 filing to be his complaint.  In the June 26, 2014 filing, which initiated this case, Plaintiff claims to have filed a complaint on or about June 9, 2014.  (DE 1 at 3.)  However, despite reasonable efforts, the Court has been unable to locate such a document, other than a standard prisoner civil rights form.  (DE 1 at 1-2, 10.)  The remainder of the documents filed with the Court on June 26, 2014, which was jointly docketed with the complaint as DE 1, is styled as an emergency motion for a restraining order.  (DE 1 at 3-9.)  Moreover, the Court suspects Plaintiff's reference to a June 9, 2014 filing is actually his Request for Administrative Remedy (Form BP-9) in TRT-NCR-2014-04492, which was denied at the final stage on or about October 17, 2014.  (*See*, *i.e.*, DE 12 at 1 ¶ 1, DE 21 at 4; *see also* BOP Policy 1330.18 ("Administrative Remedy Program") (Jan. 6, 2014).)  The Court should thus conclude that Plaintiff intended the entirety of his June 26, 2014 filing (DE 1) to be his complaint (hereinafter sometimes referred to as his "initial filing"), because elsewhere he claims to have filed his complaint on June 26, 2014, claims his lawsuit has been pending since that date and references

the contents of his motion as if they were the operative pleadings.  (*See* DE 19 at 1

¶ 1, DE 21 at 1-2.)

Nonetheless, in the absence of proof that Plaintiff submitted a pre-June 26,

2014 complaint to the Clerk of this Court for filing, the Court is left to consider

whether Plaintiff's June 26, 2014 filing, taken as a whole, constitutes a proper

complaint.  Plaintiff's 10-page June 26, 2014 filing consists of 3 pages of a form

prisoner civil rights complaint (DE 1 at 1, 2, 10), 6 pages of an emergency motion

for a restraining order with a certificate of service (DE 1 at 3-8), and a 1-page

exhibit (DE 1 at 9).  The Court need look no farther than the first substantive page

of this filing, which bears the title "Emergency Motion for Emergency Restraining

Order to Have Plaintiff Removed from Any Unit Team Inclusive of Miss Moody

or Mr. McClatchey," to see that, in substance, this is really just a motion for

injunctive relief, a conclusion which is confirmed by the motion's prayer for relief.

(*See* DE 1 at 3, 7.)

> **2.     Even if the initial filing is construed as a complaint, it seeks
> only injunctive or declaratory relief and, thus, has been
> rendered moot by Plaintiff's transfer from FCI Milan to
> FCI Elkton.**
>
> > **a.     It is questionable whether this filing is a properly
> > pleaded complaint under Fed. Rules Civ. P. 7(a)(1),
> > 8(a) and 10(b).**

Among the pleadings permitted in a lawsuit is a complaint.  Fed. R. Civ. P.

7(a)(1).  The only document styled as a "complaint' in this action is, in reality,

nothing more than a standard cover sheet, a list of defendants, and a list of previous lawsuits.  (DE 1 at 1, 2 & 10.)  Fed. R. Civ. P. 8, which sets forth the general rules of pleading, gives the requirements for stating a claim for relief.  Even after examining Plaintiff's initial filing in its entirety, it is not clear whether it is a proper pleading under the Rules, particularly Fed. Rules Civ. P. 8(a)(2) and 10(b), assuming it is construed as a pleading, rather than a mere motion.

Certainly, the initial filing could be considered to have complied with Fed. R. Civ. P. 8(a)(1)'s requirement of a "short and plain statement of the grounds for the court's jurisdiction . . . ."  Moreover, although the form pages supply no substantive factual allegations, assertion of causation or demand for relief– other than to identify this as a "prisoner civil rights complaint" brought pursuant to 42 U.S.C. § 1983 or *Bivens* (either of which jurisdictional bases would satisfy 28 U.S.C. § 1331), list the parties, and list previous lawsuits  – the pages comprising the attached emergency motion for injunctive relief do set forth "a demand for the relief sought, which may include relief in the alternative or different types of relief."  Fed. R. Civ. P. 8(a)(3).  (*Compare* DE 1, 2 & 10, DE 3-8.)  Specifically, Plaintiff seeks declaratory and injunctive relief, as well as "such further and other relief that this Honorable Court deems just and necessary."  (DE 1 at 7.)

Nonetheless, it is questionable whether Plaintiff's initial filing complies with Fed. R. Civ. P. 8(a)(2)'s requirement of "a short and plain statement of the claim

showing that the pleader is entitled to relief . . . ."  The substantive pages of this

filing mention, *inter alia*, a "culture of retaliation" and the suggestion that a

"'cease and desist' order" might put an end to "ongoing abuse," which includes "a

long list of intentional torts and unintentional torts that include but are not limited

to [] verbal assault, abuses of process, retaliation, [and] retaliatory behavior every

moment Buffman is awake (and probably while he is asleep as well), which

cause[s] him Emotional Distress…as a result of all the *Millbrook* violations . . . "

and which seem "to be of no concern to FCI Milan Staff."  (DE 1 at 6 ¶¶ 7-9.)[2]

However, while Plaintiff's filing does make use of numbered paragraphs, it is

difficult to distinguish Plaintiff's causes of action, and it would have been helpful

if Plaintiff had stated each claim in a separate count.  *See also* Fed. R. Civ. P. 10(b)

("If doing so would promote clarity, each claim founded on a separate transaction

or occurrence—and each defense other than a denial—must be stated in a separate

count or defense.").  Nonetheless, "the allegations of the pro se complaint [are

held] to less stringent standards than formal pleadings drafted by lawyers," *Haines*

*v. Kerner*, 404 U.S. 519, 520 (1972).  Therefore, the Court will assume, *arguendo,*

---

[2] In *Millbrook v. United States*, 133 S.Ct. 1441, 1446 (2013), the Supreme Court
held that "the waiver effected by the law enforcement proviso extends to acts or
omissions of law enforcement officers that arise within the scope of their
employment, regardless of whether the officers are engaged in investigative or law
enforcement activity, or are executing a search, seizing evidence, or making an
arrest."

that the substance of Plaintiff's initial filing complies with Rules 8(a)(2) and 10(b) and will construe it as a pleading.[3]

> **b.    Even if the initial filing is construed as a complaint, it seeks only injunctive relief.**

The Court has gleaned some specifics from Plaintiff's initial filing.  For example, Plaintiff claims that Moody's "ongoing and constant refusal to sign [him] out of Education has caused Buffman to submit administrative remedies to correct Miss Moody's behavior[,] to no avail."  Plaintiff explains that "since [he] began filing remedies," Moody's behavior has "gotten so extreme and outrageous . . . ." (DE 1 at ¶ 3)  According to Plaintiff, Moody has attempted "to put Buffman back into his work environment when he was on Convalescence Care . . . ."  (DE 1 at 4 ¶ 3.)[4]  Furthermore, according to Plaintiff, Moody has changed his Custody Classification "to reflect a worse score than originally calculated for him by Mr. Henley."  (DE 1 at 5 ¶ 5.)  In addition, Plaintiff states that, on or about March 27, 2013, Moody gave him an "Incident Report" for "Being Unsanitary or Untidy."

---

[3] *Evans v. Mercedes Benz Fin. Servs., LLC*, No. 11-11450, 2011 WL 2936198, at *2 (E.D. Mich. July 21, 2011) ("Even excusing plaintiff's failure to follow Rules 8(a)(2) and 10(b), a *pro se* plaintiff must comply with basic pleading requirements, including Rule 12(b)(6).").  Interestingly, Plaintiff's previously filed lawsuit began with a more properly formed initiating document.  (*See* Case No. 13-14024 (DE 1).)

[4] On March 29, 2013, Stephen Gidel, MLP, placed Plaintiff on medical duty status, noting, among other things, that he was confined to the living quarters with certain exceptions.  (DE 1 at 6 ¶ 6, DE 1 at 9.)

(DE 1 at 5 ¶ 6.)  Also, Plaintiff alleges that, on June 16, 2014, he "learned that multiple other inmates have been allowed to sign out of the Education Departme[n]t through their Unit Team or Psychology."  (DE 1 at 3 ¶ 2; *see also* DE 1 at 6 ¶ 7.).[5]

This Court's November 13, 2015 opinion and order noted that Plaintiff's initial filing seeks injunctive relief against an FCI Milan Defendant and further noted that Plaintiff has transferred to FCI Elkton.  (DE 20 at 2.)  Therefore, the Court directed Plaintiff to show cause why his case against FCI Milan Defendant Miss Moody should not be dismissed as moot. (DE 20 at 5.)  In his November 30, 2015 show cause response, Plaintiff references his June 26, 2014 "complaint" and argues that he "seeks more than injunctive relief; other relief to include legal remedies regarding tort actions and damages is also sought."  (DE 21 at 1.)

---

[5] Shortly after he filed his initial document, Plaintiff submitted a "motion for admission of evidence on the record to be utilized for any and all motions presented to this Court in the case at bar at any time during this case" (DE 5 at 1-2), attached to which was a "sworn statement," (DE 5 at 3-11).  These items were dated July 9, 2014 and filed on July 14, 2014.  In his sworn statement, Plaintiff describes the events of March 27, 2013 and April 1, 2013, as well as the events of April 3, 2014 through July 9, 2014.  On September 10, 2014, Magistrate Judge Komives entered an order granting in part Plaintiff's motion  (DE 13).  The Court will not pour through Plaintiff's sworn statement to enlighten the matter at bar, because it is not a pleading and because Magistrate Judge Komives's order cautioned Plaintiff that "he must make specific reference to the sworn statement in future filings in order for the Court to consider it."  (DE 13 at 4.)  Notably, Plaintiff does not make specific reference to his sworn statement in response to my show cause order (DEs 20, DE 21 at 1-3), discussed *infra*.

According to Plaintiff, he brings tort matters against Defendant Moody in his initial filing, *i.e.*, "relief which is beyond injunctive relief, and independent of Plaintiff's transfer from FCI Milan." (DE 21 at 2.)[6]

Here, the Court should instead conclude that Plaintiff's June 26, 2014 filing seeks only injunctive and declaratory relief. First, two of the paragraphs of the prayer for relief seek such relief: (A) "immediate placement in an alternative unit with no oversight by Miss Moody or Mr. McClatchey[;]" and (B) a cease and desist order setting forth certain declarations. (DE 1 at 7 ¶¶ A, B.)[7]

Second, the other prayer for relief, "such further and other relief that this Honorable Court deems just and necessary[,]" DE 1 at 7 ¶ B, does not, alone, constitute a request for money damages. To be sure, "[a] court of equity is not limited by the precise demands of the pleadings, especially where the pleadings contain prayers for such other relief as this Court may deem just and appropriate." *Chicago & Eastern Illinois R. Co. v. Illinois Central R. Co.*, 261 F.Supp. 289 (N.D.

---

[6] He also refers therein to his IFP application (DE 7), two Court orders (DEs 9, 15) and his attached grievance response (DE 21 at 4), none of which are pleadings under Fed. R. Civ. P. 7(a).

[7] Plaintiff does ask that the terms of this request begin "the date of the order and continu[e] until Buffman is released from [the] custody of the [FBOP] or any Community Corrections Center (halfway house) where Miss Moody or Mr. McClatchey would or could have any contact with any member of that staff as well[.]" (DE 1 at 7 ¶ B.) Without a showing that Miss Moody's reach is possible beyond FCI Milan, this request will still be interpreted as mooted by Plaintiff's transfer from FCI Milan.

Ill. 1966); *see also Scholl v. Scholl*, 152 F.2d 672 (D.C. Cir. 1945) (where appellee's prayer included the phrase, "[a]nd for such other and further relief as to the Court may seem just and proper[,]" the Court found, "[u]nder these circumstances, it can hardly be said that the mere failure to include in the complaint a specific prayer relating to the rents and the furniture was a defect which affected the substantial rights of the parties."), *New Amsterdam Casualty Company v. Waller*, 323 F.2d 20, 24 (4th Cir. 1963) (a plaintiff "need not set forth any theory or demand any particular relief for the court will award appropriate relief if the plaintiff is entitled to it upon any theory.").  In other words, "a party's misconception of the legal theory of his case does not work a forfeiture of his legal rights."  *New Amsterdam Casualty Company*, 323 F.2d at 25.  Moreover, as noted above, *pro se* complaints are interpreted liberally.  *Haines*, 404 U.S. at 520. "When interpreting the pro se papers, the Court should use common sense to determine what relief the party desires."  *Securities and Exchange Commission v. Elliott*, 953 F.2d 1560, 1582 (11th Cir. 1992) (citing *Simmons v. Zibilich*, 542 F.2d 259, 260 (5th Cir. 1976)).  On the other hand, "courts may not rewrite a complaint to include claims that were never presented . . . nor may courts construct the Plaintiff's legal arguments for him.  Neither may the Court 'conjure up unpled allegations[.]'"  *Rogers v. Detroit Police Dept.*, 595 F.Supp.2d 757, 766 (E.D. Mich. 2009) (Ludington, J., adopting report and recommendation of Binder, M.J.).

Ultimately, it is the <u>nature of the allegations</u> that guides the Court's determination of whether Plaintiff has requested monetary relief. *Moffett v. Gene B. Glick Co., Inc.*, 604 F.Supp. 229 (1984) (allegation that Plaintiff was damaged "in an amount and character to be proven at trial[,]" was characterized as asserting a claim for money damages; prayer that the Court "grant her all appropriate relief[,]" was construed as a request for a monetary judgment). In his initial filing, Plaintiff mentions "intentional torts and unintentional torts[,]" such as verbal assault, abuses of process, retaliation and retaliatory behavior. (DE 1 at 6 ¶ 8.) Plaintiff also refers to "[e]motional [d]istress as a result of all the *Millbrook* violations seems to be of no concern to FCI Milan Staff." (DE 1 at ¶ 9.) However, all of these allegations are made *in support of his request to be removed from Defendant Moody's and Defendant McClatchey's supervision* and do not assert a separate claim for damages.[8] Taken in context, *the nature of this filing* is one seeking injunctive relief.

Preliminarily, that is what is sought by the title: "Emergency Motion for Emergency Restraining Order to Have Plaintiff Removed from Any Unit Team Inclusive of Miss Moody or Mr. McClatchey[.]" (DE 1 at 3.) Moreover, Plaintiff

---

[8] Attached to Plaintiff's November 30, 2015 show cause response is a copy of the October 17, 2014 Final Denial of Claim (Number TRT-NCR-2014-04492), which refers to Plaintiff's "tort claim" and also refers to the FTCA. (DE 21 at 4.) This characterization, made in a document authored by the regional counsel to the BOP, again, does not constitute an operative pleading here.

states that Moody "has taken up a new cause at FCI Milan[,] which goes

unchecked, unbridled, and totally unbelievable." (DE 1 at 5 ¶ 4.) He describes

Moody's behavior as "oppressive and retaliatory . . . ." (DE 1 at 5 ¶ 5.) He also

states that Moody "attempted to take all of Buffman's copies in order to hide the

fact that he (Buffman) was NOT to return to his job." (DE 1 at 6 ¶ 6.)

Furthermore, he alleges a "culture of retaliation within FCI Milan [which] is so

engrained in the prison . . . ." (DE 1 at 6 ¶ 7.) Elsewhere, he claims that Moody

and McClatchey and others "are committed to remaining unfair, firm, and

consistent with their ongoing abuse of Buffman . . . ." (DE 1 at 6 ¶ 8.) In other

words, he seeks to "check" and "bridle" Defendant Moody's behavior and to have

him (Plaintiff) "removed from any unit team" involving her or Defendant

McClatchey. (DE 1 at 3, 5 ¶ 4.) Thus, in addition to the express characterization

set forth in the prayer for relief (*see* DE 1 at 7), the nature of the allegations (*see*

DE 1 at 3-6 ¶¶ 1-9) supports a "common sense" conclusion that Plaintiff's initial

filing does not seek monetary damages; instead, it seeks the injunctive relief

identified in the title of the filing. *Elliott*, 953 F.2d at 1582.[9]

---

[9] Plaintiff, himself, supplies a similar characterization of this lawsuit in his
previously filed "sworn statement," in which he describes a series of incidents
from his dealings with Defendant Moody and concludes as follows: "As a result of
this situation[,] I have filed a federal suit in the Eastern District of Michigan.
Within the suit[,] I have filed an EMERGENCY RESTRAINING ORDER against
Miss Moody, and have also requested in that motion for a[n] INJUNCTION which
would provide me **injunctive relief** of having a judge order that I be moved to a

In sum, at the time he initiated the instant lawsuit, Plaintiff was incarcerated at FCI Milan.  (DE 1 at 1.)  His initial filing expressly seeks only injunctive or declaratory relief.  (DE 1 at 3-7.)  He has since been transferred to FCI Elkton in Lisbon, OH.  (DE 18.)  Thus, his claims against Defendant Moody – the only remaining defendant - are moot.  *See, i.e., Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996) ("to the extent Kensu seeks declaratory and injunctive relief his claims are now moot as he is no longer confined to the institution that searched his mail.").

> **3.      Any further prosecution of this case or amendments to the pleadings are likely to be futile, as it appears Plaintiff has failed to properly exhaust his administrative remedies as to his claims against Defendant Moody.**

To the extent, if at all, the Court is considering permitting Plaintiff to continue prosecution of this case on the existing "pleadings" or to amend his initial filing under Fed. R. Civ. P. 15(a) to cure the aforementioned defects, any such attempt is likely to be futile.  This is so, because it appears Plaintiff has failed to properly exhaust his administrative remedies as to his claims against Defendant Moody, regardless of whether his claims seek legal damages or only equitable relief.

---

Unit that does **NOT HAVE MISS MOODY WORKING IN IT**."  (DE 5 at 11 (emphases in original).)

The statute governing prisoner lawsuits provides, in part:  "No action shall be brought with respect to prison conditions under section 1983 of this title, *or any other Federal law*, by a prisoner confined in any jail, prison, or other correctional facility *until* such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a) (emphases added).  "[F]ederal prisoners suing under *Bivens* . . . must first exhaust inmate grievance procedures just as state prisoners must exhaust administrative processes prior to instituting a § 1983 suit."  *Porter v. Nussle*, 534 U.S. 516, 524 (2002).  "Federal law requires a prisoner challenging prison conditions pursuant to 42 U.S.C. § 1983, *Bivens,* or other federal law to exhaust all available administrative remedies *before* filing suit in federal court."  *Smith v. Holland*, No. CIV. 6:13-72-KKC, 2014 WL 4716620, at *3 (E.D. Ky. Aug. 26, 2014) (citing 42 U.S.C. § 1997e(a); *Porter v. Nussle,* 534 U.S. 516, 532 (2002)) (emphasis added); *see also Freeman v. Francis*, 196 F.3d 641, 645 (6th Cir. 1999) (a prisoner "may not exhaust administrative remedies during the pendency of the federal suit.") (citation omitted).

In his initial filing, Plaintiff contends that "Miss Moody's ongoing and constant refusal to sign Buffman out of Education has caused Buffman to submit administrative remedies to correct Miss Moody's behavior[,] to no avail."  DE 1 at 4 ¶ 3.  "[F]ailure to exhaust is an affirmative defense under the PLRA, and . . . inmates are not required to specially plead or demonstrate exhaustion in their

complaints." *Jones v. Bock*, 549 U.S. 199, 216 (2007). While Plaintiff is not required to specifically plead exhaustion in his complaint, the Court cannot help but notice that Plaintiff's administrative grievance Claim Number TRT-NCR-2014-04492, was denied at the final stage on or about October 17, 2014. (*See* DE 21 at 4.) [10]

The Court assumes Claim Number TRT-NCR-2014-04492 is Plaintiff's administrative grievance concerning his claims against Defendant Moody. (DE 21 at 4.) [11] While the date on which Plaintiff initiated this grievance is unclear, it is clear that the grievance was denied at the final stage on or about October 17, 2014, a date well after the June 26, 2014 initial filing in this case. (DE 1, DE 21 at 4.) The Supreme Court has directed that "proper exhaustion of administrative

---

[10] Even after *Jones*, at least one Court has permitted *sua sponte* dismissal where the failure to exhaust is apparent on the face of the complaint. "[E]ven though exhaustion of administrative remedies need not be pled specifically in the complaint, where it is apparent from the face of the complaint that an inmate has failed to exhaust the prison grievance procedure *sua sponte* dismissal is appropriate on initial review for failure to state a claim upon which relief may be granted." *Gergely v. Warren Corr. Inst.*, No. 1:09-CV-757, 2009 WL 4597943, at *3 (S.D. Ohio Dec. 3, 2009). *See also Frost v. Stalnaker*, No. 1:09CV662, 2009 WL 3873666, at *3 (S.D. Ohio Nov. 18, 2009) (Dlott, C.J., adopting report and recommendation of Hogan, M.J.), *Brown v. Lebanon Corr. Inst.*, No. 1:09-CV-513, 2009 WL 2913930, at *2 (S.D. Ohio Sept. 9, 2009) (Dlott, C.J.). Nonetheless, the Court need not consider *sua sponte* dismissal here on the basis of exhaustion if it agrees with the other conclusions reached in my report.

[11] "Federal prisoners raise grievances through the Bureau of Prisons' (BOP) Administrative Remedy Program." *Hinton v. Parsons*, 73 F. App'x 872, 874 (6th Cir. 2003).

remedies is necessary." *Woodford v. Ngo*, 548 U.S. 81, 84 (2006). "Proper

exhaustion demands compliance with an agency's deadlines and other critical

procedural rules because no adjudicative system can function effectively without

imposing some orderly structure on the course of its proceedings." *Id.* at 90-91.

This Court recently summarized the BOP's Administrative Remedy Program as

follows:

> The BOP Administrative Remedy Program is a multi-tier process that
> is available to inmates confined in institutions operated by the BOP
> for "review of an issue relating to any aspect of his/her own
> confinement." 28 C.F.R. § 542.10. An inmate must initially attempt to
> informally resolve the issue with institutional staff. *See* 28 C.F.R. §
> 542.13(a). If informal resolution fails or is waived, an inmate may
> submit a BP–9 Request [BP-229] to within 20 days of the date on
> which the basis for the Request occurred, or within any extension
> permitted. *See* 28 C.F.R. § 542.14. An inmate who is dissatisfied with
> the Warden's response to his BP–9 Request may submit a BP–10
> Appeal [BP-230] to the Regional Director of the BOP within 20 days
> of the date the Warden signed the response. *See* 28 C.F.R. §
> 542.15(a). The inmate may appeal to the BOP's General Counsel on a
> BP–11 form [BP-231] within 30 days of the day the Regional Director
> signed the response. *See id.* Appeal to the General Counsel is the final
> administrative appeal. *See id.* If responses are not received by the
> inmate within the time allotted for reply, "the inmate may consider the
> absence of a response to be a denial at that level." 28 C.F.R. § 542.18.

*Vaughn v. Terris*, No. 2:15-CV-10092, 2015 WL 3605080, at *2 (E.D. Mich. June

8, 2015); *see also* U.S. D.O.J. F.B.O.P. Program Statement No. 1330.18.

The copy of the Office of Regional Counsel's October 17, 2014 letter

appears to be the culmination of the appeals stage, but also purports to constitute a

"Final Denial of Claim." (DE 21 at 4; 28 C.F.R. § 542.15.) In any event, it

remains that the June 26, 2014 initiation of the instant case occurred *before* the administrative process on Claim Number TRT-NCR-2014-04492 had run its course.  In fact, Plaintiff admits that "this action was filed during the Administrative Remedy Process as attached in Exhibit A [(DE 21 at 4)]."  (DE 21 at 2.)  Thus, unless there is another, properly exhausted, grievance upon which Plaintiff would rely to support his claims against Defendant Moody initiated by the June 26, 2014 filing, it is likely the instant case will face a successful motion to dismiss on the basis of failure to exhaust.  This will prove fatal to Plaintiff's case, irrespective of whether his pleadings are adequate or his claims seek monetary damages.

Likewise, even if it was Plaintiff's intention to pursue damage claims under the FTCA, he must exhaust his administrative remedies.  "The government has waived its sovereign immunity to suits for tort actions under the FTCA, but only insofar as the plaintiff has exhausted his administrative remedies."  *Blakely v. United States*, 276 F.3d 853, 864 (6th Cir. 2002) (citing 28 U.S.C. § 2675(a); *Lundstrum v. Lyng,* 954 F.2d 1142, 1145 (6th Cir. 1991) ("A prerequisite to suit under the FTCA, ... is the exhaustion by the plaintiff of administrative remedies**.**")**.**  "Section 2675(a) provides that an 'action shall not be instituted upon a claim against the United States for money damages ... unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall

have been finally denied by the agency in writing and sent by certified or registered mail.'" *Blakely*, 276 F.3d at 864. "A claim submitted to the proper administrative agency is considered sufficient to satisfy the exhaustion requirement if it is a 'written notification of an incident, accompanied by a claim for money damages in a sum certain for injury to or loss of property, personal injury, or death.'" *Id.* (quoting *Lundstrum,* 954 F.2d at 1145). *See also, Wilson v. United States*, 93 F. App'x 53, 54 (6th Cir. 2004) ("Claimants seeking to bring an action under the FTCA against the United States for money damages must first present the claim to the appropriate agency and have the claim finally denied by the agency. . . . To raise a *Bivens* claim, a federal prisoner must first raise his grievance through the BOP's Administrative Remedy Program.") (citing 28 U.S.C. § 2675(a) and 28 C.F.R. §§ 542.10, *et seq.*) (other internal citation omitted).

> **4.    The Court need not undertake further effort at service upon Defendant Moody, because Plaintiff has not shown cause why the case against Defendant Moody should not be dismissed.**

To date, Defendant Moody has not appeared, nor does it appear that she has been served. (*See* DE 14.) As stated in my November 13, 2015 order:

> . . . there is no executed "waiver of the service of summons" or other evidence of service on the docket. To the contrary, the docket demonstrates a lack of successful service. (*See*, *i.e.*, DE 14.) Attempts at service upon Defendant Moody have not been without effort by the Court and the U.S. Marshal. For example, on August 5, 2014, the U.S. Marshal was provided with papers for service upon

Moody.  (DE 11.)  The waiver was returned to sender on the basis that Moody was not at FCI Milan. (DE 14.).

(*See* DE 20 at 2.)  I then noted that Plaintiff's Complaint seeks injunctive relief against an FCI Milan Defendant, but Plaintiff has transferred to FCI Elkton. (DE 20 at 2-4.)

Plaintiff's November 30, 2014 show cause response presents the argument that he seeks more than injunctive relief, such as legal remedies regarding tort actions and damages.  (DE 21 at 1-2.)  Plaintiff further requests an order regarding an address at which Defendant Moody may be served and receive correspondence. (DE 21 at 2-3.)  However, for the reasons stated above, the Court should conclude that Plaintiff's initial filing seeks only injunctive and/or declaratory relief.  Such relief is rendered moot by Plaintiff's transfer from FCI Milan to FCI Elkton. Moreover, the docket entries suggest a failure to exhaust administrative remedies in any case.  Therefore, service upon Defendant Moody is unnecessary, and the case should be dismissed.   Alternatively, if the Court believes that Plaintiff has actually pleaded any state law claims which would otherwise survive the aforementioned impediments, the Court should exercise its discretion to refrain from retaining supplemental jurisdiction and dismiss those claims on that basis.  28 U.S.C. § 1367(c)(3).

## III.   PROCEDURE ON OBJECTIONS:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1273 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," *etc.*  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to

Objection No. 2," *etc.* If the Court determines that any objections are without

merit, it may rule without awaiting the response.


Dated: April 6, 2016                          s/Anthony P. Patti

                                              Anthony P. Patti
                                              UNITED STATES MAGISTRATE JUDGE

I hereby certify that a copy of the foregoing document was sent to parties of record
on April 6, 2016, electronically and/or by U.S. Mail.

                                              s/Michael Williams

                                              Case Manager for the
                                              Honorable Anthony P. Patti